IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS ADAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 02 C 8700 |
| v. | ) | |
| | ) | Magistrate Judge Maria Valdez |
| RICHARD CATRAMBONE and GREAT LAKES BUILDING MATERIALS, INC., | ) ) | |
| | ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Thomas Adams brought this action against defendants Richard Catrambone and Great Lakes Building Materials, Inc. ("GLBM"), alleging breach of fiduciary duty, tortious interference with economic advantage, and violation of the Illinois Wage Act. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

Liability and damages were bifurcated by agreement of the parties. The liability phase was tried before a jury, and damages were heard in a bench trial. On March 23, 2007, following a four-day trial, a jury found in favor of Adams and against Catrambone on his fiduciary duty and loss of prospective economic advantage claims and in favor of Adams and against GLBM on his Illinois Wage Act claim. The jury further found with respect to both claims against Catrambone that Catrambone's conduct was willful and wanton and that Adams was entitled to an award of punitive damages. A two-day trial on damages was heard by the Court on March 30-April 1,

2008. The matter is now before the Court for findings of fact and conclusions of law on damages in accordance with Federal Rule of Civil Procedure 52(a).

The Court has considered the testimony of the witnesses who testified at both phases of the trial, the parties' trial exhibits, the stipulations made by the parties, the liability jury's verdict, the proposed findings and conclusions submitted by the parties, and the closing arguments of counsel. To the extent certain findings of fact may be deemed conclusions of law, they should also be considered conclusions of law. Similarly, to the extent matters contained in the conclusions of law may be deemed findings of fact, they should also be considered findings of fact.

## FINDINGS OF FACT

1.  Adams and Catrambone are 50/50 partners in a business or venture to, among other things, distribute building materials including drywall. Adams and Catrambone caused GLBM to be formed for the purpose of distributing building materials, with each taking a 50% interest.

2.  By finding in Adams's favor on his tortious interference claim, the jury necessarily found that the partnership was not dissolved on September 5, 2002, as Catrambone claims.

### *Breach of Fiduciary Duty Claim*

3.  Catrambone owed a fiduciary duty to Adams, he breached that duty, and Adams suffered damages proximately caused by the breach. Adams's damages were caused by insider dealing, diversion of money and profit, and wrongful termination.

4.  Catrambone, though RDM Distribution, a company owned and controlled by him, improperly overcharged GLBM by $4.00 per 1000 square feet of wallboard, a total of

$3,200.00 per week for thirty-two weeks, without disclosure to or the approval of Adams. Adams claims the total amount of damages to him is thus $102,400.00.

5. Catrambone, through Summit Truck Leasing, Inc. and Summit Express, Inc., entities owned or controlled by him, diverted monies and profits belonging to GLBM and Adams.

6. Based on the equitable accounting in this case, Adams claims his damages for wrongful diversion are $15,042,965.65. Adams, however, limits his claim of damages for wrongful diversion to $3,000,000.00.

7. Catrambone wrongfully terminated Adams as a shareholder, officer, and employee in GLBM in September 2002.

8. As a result of his wrongful termination, Adams claims lost final compensation payments from GLBM from the start of the business to September 2002 in the amount of $84,028.00, representing $71,300.00 in wages and $12,728.00 in unreimbursed expenses.

9. As a result of his wrongful termination, Adams claims lost income and benefits from September 2002 through December 2007[1] in the amount of $1,119,121.00.

10. Adams claims he lost a total of $498,935.00 in base income from September 2002 to December 2007. This income is calculated using a base weekly wage of $1,550.00, with a 3% increase for each succeeding year.

11. Adams claims he lost $525,000.00 in bonuses/dividends from September 2002 through December 2007, based upon an agreement between Adams and Catrambone. The

---

[1] For the present date, Adams uses December 31, 2007, as December 2007 was the date the case was first scheduled to go to trial on the damages issue.

claimed lost bonuses amount to $50,000.00 in 2002; $75,000.00 in 2003; $100,000.00 in 2004; $100,000.00 in 2005; $100,000.00 in 2006; and $100,000.00 in 2007.

12. Adams claims he lost a total of $51,618.00 in health benefits from September 2002 to December 2007, calculated by multiplying his monthly health insurance premiums of $645.00 in 2002 by the applicable number of weeks. For each succeeding year, Adams increased the monthly premiums by 8% over the previous year's premiums.

13. Adams claims he lost a total of $43,588.00 in lost automobile allowance from September 2002 to December 2007, calculated by multiplying his monthly base allowance of $560.00 by the applicable number of months. For each succeeding year, Adams increased the monthly allowance by 7% over the previous year.

### *Illinois Wage Act Claim*

14. Adams claims GLBM violated the Illinois Wage Act by failing to pay final compensation to Adams in the amount of $84,028.00, comprised of $71,300.00 in wages and $12,728.00 in benefits.

15. GLBM did not rebut Adams's claim for damages.

### *Tortious Interference Claim*

16. Adams had a reasonable expectancy of continuing a valid business relationship with GLBM from September 2002 through December 2012.

17. Catrambone tortiously interfered with Adams's business expectancy from GLBM by diverting money and profits of GLBM. As a partner in GLBM, Adams was damaged in the amount of 50% of monies and profits wrongfully diverted. Adams claims that

$15,042,965.65 in money and profits of GLBM were wrongfully diverted but limits his claim of damages for wrongful diversion to $3,000,000.00.

18. Catrambone tortiously interfered with Adams's business expectancy from GLBM by improperly terminating Adams from employment with GLBM and improperly interfering with Adams's right as a shareholder of GLBM.

19. Adams claims he suffered $5,297,310.00 in damages as a result of Catrambone's tortious interference. Adams's damages calculations include $1,047,348.00 in lost future income; $1,025,000.00 in lost future bonuses and dividends; $123,498.00 in lost future health benefits; and $101,464.00 in lost automobile allowance from 2008 through 2012.

## *Punitive Damages*

20. Catrambone willfully and wantonly breached his fiduciary duties to Adams.

21. Catrambone willfully and wantonly interfered with Adams's business expectancy with GLBM.

## CONCLUSIONS OF LAW

22. Pursuant to the general jury verdict on liability, Adams was a 50/50 partner of Catrambone and a 50/50 shareholder with Catrambone in GLBM.

23. As a 50/50 partner, Adams was entitled to a 50% share in the profits of GLBM.

24. As the party claiming damages, Adams "bears the burden of proving those damages to a reasonable degree of certainty." *TAS Distrib. Co., Inc. v. Cummins Engine Co., Inc.*, 491 F.3d 625, 632 (7th Cir. 2007).

25. "[I]n the specific context of lost profits damages, Illinois courts have stated that '[l]ost profits will be allowed only if: their loss is proved with a reasonable degree of certainty;

the court is satisfied that the wrongful act of the defendant caused the lost profits; and the profits were reasonably within the contemplation of the defaulting party at the time the contract was entered into.'" *Id.* (citation omitted).

26. Damages for lost profits are inherently prospective and thus "uncertain and incapable of calculation with mathematical precision." *Id.* at 632-33. Therefore, "'the evidence need only afford a reasonable basis for the computation of damages which, with a reasonable degree of certainty, can be traced to defendant's wrongful conduct.'" *Id.* at 633 (citation omitted).

27. However, "'speculative, inaccurate or false projections of income and evaluation of the business'" or evidence based on conjecture will not support a damages award. *Id.*

28. Adams's computation of wage and benefits damages are based on figures that were agreed upon between Adams and Catrambone.

29. An equitable accounting may be ordered where the computation of damages is extremely complex. *See Drake Enters., Inv. v. Colloid Env't Techs. Co.*, No. 08 C 6753, 2009 WL 1789355, at *3 (N.D. Ill. June 24, 2009).

30. Catrambone provided Adams with a Statement of Account, which consisted of a document containing thousands of line items and thirty-two boxes of documents. The line items did not identify or otherwise refer to the documentation supporting each entry.

31. Adams objected to a total of $15,042,965.65 in entries that indicated wrongful diversion. Catrambone did not amend the accounting in response to Adams's objections.

32. Catrambone's Statement of Account in this case was deficient in numerous ways, including failing to itemize figures and failing to introduce evidence of underlying

records in support of his statement of accounting. In addition, Catrambone's own trial testimony established his lack of credibility with regard to his accounting methods. The Court therefore finds that Catrambone's records may be altered or are otherwise not credible. The accounting's deficiencies and Catrambone's lack of credibility lead to an adverse inference against Catrambone's version of the accounting.

### *Damages for Breach of Fiduciary Duty*

33. Adams's calculation of $102,400.00 for Catrambone's overcharging for wallboard does not take into account the fact that Adams was a 50/50 shareholder in GLBM. The Court therefore finds that Adams is entitled to only **$51,200.00** in damages for the wallboard overcharge.

34. Adams's testimony acknowledged that his calculation of $15,042,965.65 in diverted profits was only an educated guess at best and that his final demand for $3,000,000.00 was based upon an apparently arbitrary reduction of 40%, with 50% of the reduced amount owing to him as a partner in GLBM.

35. However, the Court finds that Catrambone's own failure to provide a complete and credible statement of accounting was a substantial reason why profits could not be calculated in more detail.

36. The Court concludes that Adams has proved to a reasonable degree of certainty that Catrambone unlawfully diverted at least **$500,000.00** in money and profit from related-party transactions.

37. As Catrambone has offered no evidence contrary to Adams's stated loss of final compensation for unlawful termination in breach of Catrambone's fiduciary duty, Adams is entitled to an award of the full amount of **$84,028.00.**

38. Adams has proven to a reasonable degree of certainty that he is entitled to lost wages in the amount of $1,550.00 per week from September 2002 to December 2007. He has not, however, established any basis for increasing his wages by 3% per year, and thus any increase is speculative. Adams is awarded **$427,800.00** for his lost wages.

39. Adams's testimony established that his claim of lost future bonuses and dividends was speculative, and thus those damages cannot be awarded. *See Partington v. Broyhill Furniture Indus., Inc.*, 999 F.2d 269, 273 (7th Cir. 1993) (finding, in the context of proving future bonus damages, that the greater amount at stake, the greater the burden of production); *cf. Schiffels v. Kemper Fin. Servs., Inc.*, No. 91 C 1735, 1993 WL 153850, at *6-7 (N.D. Ill. May 11, 1993) (awarding future bonus damages when employee was entitled to a bonus as part of an executive compensation plan).

40. Adams has established to a reasonable degree of certainty that he is entitled to damages for lost health benefits in the amount of $645.00 per month from September 2002 to December 2007. He admitted at trial, however, that his assumption of an 8% yearly increase in benefits is speculative. Adams is therefore awarded **$41,280.00** in lost health benefits for his breach of fiduciary claim.

41. Adams's claim for his lost automobile allowance is too speculative to be awarded.

42. Adams is therefore awarded a total of **$1,104,308.00** in damages for his breach of fiduciary claim against Catrambone.

### *Damages for Tortious Interference Claim*

43. Adams's claim of damages for wrongfully diverted monies and profits has already been accounted for in relation to his breach of fiduciary claim, as described above.

44. Adams has established that he is entitled to lost future income from 2008 through 2012. He has not shown any basis for awarding the speculative yearly increase in wages. Adams is awarded a total of **$403,000.00** for lost future income.

45. As stated above, Adams has not established to a reasonable degree of certainty that he is entitled to lost future bonuses or dividends.

46. Adams has established to a reasonable degree of certainty that he is entitled to damages for lost future health benefits in the amount of $645.00 per month from 2008 to 2012. He has not offered any evidence supporting his assertion that the award should include an 8% yearly increase in benefits. Adams is therefore awarded **$38,700.00** in lost health benefits for his breach of fiduciary claim.

47. As stated above, Adams's claim for his lost future automobile allowance is too speculative to be awarded.

48. Adams is therefore entitled to a total of **$441,700.00** in additional damages for the tortious interference claim against Catrambone.

### *Damages for Equitable Accounting*

49. Adams's request for $15,042,965.65 in damages on the equitable accounting is improper under the circumstances. The purpose of the accounting in this case was to enable Adams to calculate damages for his breach of fiduciary duty and tortious interference claims to a reasonable degree of certainty in a complex case. *See Medtronic, Inc. v. Intermedics,*

*Inc.*, 725 F.2d 440, 443 (7th Cir. 1984). Adams has not offered evidence warranting additional money damages for the accounting beyond those he has already established in relation to his breach of fiduciary duty and tortious interference claims, particularly where the accounting damages he seeks double count those recovered for his other causes of action.

### *Set Off*

50. Adams's testimony established that his wages and unemployment compensation following his termination from GLBM amounted to $31,484.63 in 2002; $15,204.00 in 2003; $47,344.00 in 2004; $153,234.00 in 2005 and 2006; and $120,000.00 in 2007. Adams has not shown that he does not have a reasonable expectancy of maintaining a level of $120,000.00 in wages through 2012. Adams has also not demonstrated that he would have received these wages even if he had remained employed at GLBM, and thus his total recovery will be set off by a total amount of **$1,120,500.63.**

### *Punitive Damages*

51. As a result of Catrambone's willful and wanton breach of fiduciary duty and tortious interference with Adams's business expectancy, Adams is entitled to an award of punitive damages against Catrambone. Under Illinois law, "the purpose of an award for punitive damages is to punish the individual responsible for the wrongful conduct, to teach the individual not to repeat the wrongful conduct, and to deter others from similar conduct." *V.I.M. Recyclers, L.P. v. Magner*, No. 2005 WL 1745657, at *19 (N.D. Ill. July 21, 2005) (citing *Page v. City of Chi.*, 701 N.E.2d 218, 227 (Ill. App. Ct. 1998)). The Court finds

that an award of **$150,000.00** is sufficient to punish Catrambone and to deter him and others from similar conduct in the future.

### *Illinois Wage Act Damages*

52. GLBM has offered no evidence contrary to Adams's stated loss of final compensation, and therefore Adams is entitled to an award of **$84,028.00** from GLBM.

### **CONCLUSION**

For the foregoing reasons, Plaintiff Thomas Adams is entitled to damages from defendant Richard Catrambone for breach of fiduciary duty and tortious interference with prospective economic advantage in the amount of **$575,507.37**. Adams is further entitled to damages from Great Lakes Building Materials, Inc. in the amount of **$84,028.00.**

**SO ORDERED.**

**ENTERED:**

*[signature: Maria Valdez]*

**DATE:** September 30, 2010

**HON. MARIA VALDEZ**
**United States Magistrate Judge**