IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THOMAS ADAMS, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) ) No. 02 C 8700 |
| RICHARD CATRAMBONE, *et al.*, | ) ) |
| Defendants. | ) |

## COMBINED MEMORANDUM OF LAW FOR PETITIONS FOR PRELIMINARY INJUNCTION

**NOW COMES** Petitioner **THOMAS ADAMS** by and through his attorneys, Carlton Odim of Odim Law Offices and Jeffrey Antonelli of the Law Office of Jeffrey J. Antonelli, Ltd., and in support of Plaintiff's Petitions for Preliminary Injunction presents the following Memorandum of Law in support:

### PERTINENT FACTS

1. On September 10, 2010, this Court entered final judgment for compensatory and punitive damages in favor of plaintiff against Richard Catrambone ("Richard Catrambone" or "Richard") for a total of $659,535.37. That judgment remains wholly unsatisfied. (Dkt. No. 277).

2. Plaintiff's counsel recently learned that the million dollar-plus home of Richard Catrambone, located at 10756 Wentworth, Naperville, Illinois, which is part of Chicago Title and Trust No. 1105397, has been placed on the market for sale. A sale can happen at any time. The home was put on the market less than three weeks after Richard Catrambone and his wife Lorraine Catrambone were served citations to discover assets in this case.

3. Plaintiff's counsel has also learned after a great deal of factual research that Richard Catrambone, despite his pleas of insolvency, owns and operates trucking companies nominally held in his wife Lorraine Catrambone's name and his daughter Denise Catrambone

Gray as President, and his other daughter Lisa Catrambone Jacobson as Registered Agent. (See accompanying Motion for Preliminary Injunction). The assets of a trucking company can obviously be moved very quickly, including out of state.

4. It is highly likely once Richard Catrambone and his trucking companies receive notice of Plaintiff's motion to cancel the fraudulent transfer of his interest in the real estate trust (discussed *infra*.) and the accompanying Motions for Preliminary Injunctions, without judicial intervention of a TRO or other emergency relief the trucks will be moved, money will be transferred and dissipated by Richard and his wife Lorraine, and the trucks will be moved perhaps out of state.

5. Richard Catrambone has an established habit of false testimony at trial, at his August 2011 deposition, and has committed a significant multimillion dollar fraudulent transfer on the eve of the first trial date. (See accompanying motion to cancel fraudulent transfer).

6. The underlying case involved fraudulent tampering of discovery documents and the fraudulent use of shell companies controlled by Richard Catrambone to loot the corporate defendant Great Lakes Building Materials, Inc. for which this Court imposed punitive damages against Richard Catrambone.

7. On or about April 19, 2011, in response to Plaintiff's citation, United Central Bank (f/k/a Mutual Bank, f/k/a Security Bank of DuPage) tendered documents and one of the documents is a copy of an assignment document (and related documents) in which Defendant Richard Catrambone transfers 100% of his interests in Chicago Title Land Trust No. 1105397 ("Trust 1105397") to his wife Lorraine Catrambone ("Lorraine Catrambone" or "Lorraine"). Trust 1105397 contains the marital home located at 10756 Wentworth, Naperville, Illinois, and on information and belief real property located in Sugar Grove, Illinois and Spring Grove, Illinois. This was a fraudulent transfer. Plaintiff could not have

learned of the transfer prior to initiating post-judgment proceedings in this case, because the documents which reflect the transfer are non-public documents held in a private trust. **See Exhibits A and F.**

8. On May 26, 2011 Respondents Lorraine and Richard were served citations to discover assets.

9. On or about June 12, 2011 Richard Catrambone listed his residence located at 10756 Wentworth, Naperville, Illinois for sale. **Exhibit B**

10. On or about July 7, 2011 the listed price for 10756 Wentworth was reduced to $1,199,000.00. **Id.** On or about July 20, 2011 the listed price for 10756 Wentworth was again reduced to $1,150,000. **Id.**

11. On or about July 23, 2011 Respondent Richard was mailed his notice of deposition, scheduled for August 4, 2011. **Exhibit C.**

12. On August 4, 2011, During Richard Catrambone's Rule 69 deposition in aid of post-judgment collection Richard denied knowing why he transferred his interest in the trust to his wife. **Exhibit D.**

13. On or about August 30, 2011 the listed price for 10756 Wentworth was again reduced to $1,125,000. **Exhibit B.**

## PROCEDURAL HISTORY

14. Concurrently with this combined memorandum of law, Plaintiff Thomas Adams has filed a Motion for Preliminary Injunction relating to the residence at 10756 Wentworth, Naperville, Illinois and Chicago Title and Trust No. 1105397; a Motion for Preliminary Injunction relating to the trucking companies owned by Richard Catrambone: SUM EXP, INC., SG NORTH LLC, SG WEST, INC., and SUMMIT EXPRESS, INC.; and a Motion to Cancel Fraudulent Transfer as to his interest in Chicago Title and Trust No. 1105397 on the eve of the first scheduled trial date in this cause in August 2006.

15. These requests for injunctive and other relief are ancillary to the underlying case which was a civil action against Richard Catrambone and Great Lakes Building Materials, Inc. for compensatory and punitive damages arising from claims for an equitable accounting (Count 1), back wages (Count 2), reimbursement of business expenses (Count 3), interference with prospective business advantage (Count 4), and breach of fiduciary duties (Count 5).

## ARGUMENT

### I. THIS COURT HAS LEGAL AUTHORITY TO GRANT A PRELIMINARY INJUNCTION

This Court has the legal authority to grant a TRO and Preliminary Injunction under Rule 65 and the Illinois Uniform Fraudulent Transfer Act ("IUFTA"), 740 ILCS 160/8 (a) & (b), which provide that a creditor may obtain the following relief: §8. (a) (1) avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim; (2) an attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by the Code of Civil Procedure; (3) subject to applicable principles of equity and in accordance with applicable rules of civil procedure, **(A) an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property; (B) appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or (C) any other relief the circumstances may require.** §8. (b) If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds.

IUFTA allows a creditor to avoid transfers made with fraudulent intent in order to shield assets from creditors. *In re Mussa,* 215 B.R. 158, 167 (N.D.Ill.1997). The Uniform Fraudulent Transfer Act sets out certain "badges of fraud" a court may presume fraudulent intent if it finds a sufficient number of these badges. *Infra.* This Court has broad discretion to grant a temporary restraining order and preliminary injunction in this matter. *Short Paper Products, Inc. v. Frary,* 74 Ill. App. 3d 498, 602,

392 N.E.2s 1148 (2nd Dist. 1979).

## II. STANDARD FOR GRANTING PRELIMINARY INJUNCTIVE RELIEF

The requirements for a preliminary injunction in the context of a showing of fraudulent transfers taking place were stated in the strikingly similar case of Star Ins. Co. v. Risk Marketing Group, Inc.: "plaintiffs have moved for a preliminary injunction to prevent defendants from disposing of assets or taking other detrimental action, to prevent those individuals and entities who purportedly received fraudulent transfers from defendants from disposing of those amounts and to freeze the assets of those entities and individuals, and to order those entities and individuals to provide plaintiff's counsel with a detailed balance sheet showing their net worth and a list of all the transfers they have made since the entry of judgment. To obtain a preliminary injunction plaintiffs must show that (1) they are reasonably likely to succeed on the merits; (2) no adequate remedy at law exists; (3) they will suffer irreparable harm which, absent injunctive relief, outweighs the irreparable harm the defendants will suffer if the injunction is granted; and (4) the injunction will not harm the public interest." Star Ins. Co. v. Risk Marketing Group, Inc. 507 F.Supp.2d 942, 946 (N.D. Ill., 2007), citing Joelner v. Vill. of Washington Park, Illinois, 378 F.3d 613, 619 (7th Cir.2004).

## III. PLAINTIFF MEETS HIS BURDEN FOR PRELIMINARY INJUNCTION BY A SHOWING THAT SUFFICIENT BADGES OF FRAUD ARE PRESENT

As in *Star Ins. Co.*, plaintiff has met his burden to show that a preliminary injunction is appropriate against defendants. For the reasons cited in the motions for preliminary injunction and to cancel the fraudulent transfer, incorporated herein by reference, Plaintiff has shown he is reasonably likely to succeed on the merits. Plaintiff has a valid judgment against defendant Richard Catrambone. Richard Catrambone indicated clearly in his post-judgment deposition that he is insolvent and unable to pay the judgment. Plaintiff has demonstrated that in 2006 Richard Catrambone engaged in at least one fraudulent transaction on the eve of the first trial date transferring 100% of his interest in the land trust containing millions of dollars of real property including the marital home he resides in to his wife,

Lorrain Catrambone for no consideration. Richard Catrambone stated in his deposition that he "did not know why" he committed the transfer, but it is clear his intent was to protect his assets from the eventual judgment that would be entered against him. **Exhibit D pp. 33-36.**

In this case, the undisputed facts demonstrate that enough of the badges of fraud under IUFTA are present for this Court to presume fraud. The transfers were made to Lorraine Catrambone, Richard's wife on the eve of the first trial date. **Exhibit F** Richard Catrambone created trucking companies and put them nominally in his wife Lorraine's name. Documents obtained by Plaintiffs through the United States Department of Transportation show that Richard Catrambone is in control of **SUM EXP, INC., SG NORTH LLC, SG WEST, INC.,** and **SUMMIT EXPRESS, INC.**. The registration of his telephone number with USDOT is identical to that provided in his post-judgment deposition in August 2011. His role as consultant and owner of SUM EXP INC. is shown by DOT records with his signature. **Exhibits E,J.** Plaintiff contends that these transfers were concealed and were made after litigation ensured with Richard Catrambone.

The threat of further fraudulent transfers constitute irreparable harm warranting injunctive relief. Delaware Uniform Fraudulent Transfer Act, section 1307 (a). As the express aim of the Act is that its provisions be applied and construed to make uniform the law of fraudulent transfers among the states adopting the law. 760 ILCS 160/12. Levy v. Markal Sales Corp., 724 N.E.2d 1008, 1011 (Ill. App., 2000)., this Court should likewise hold that the threat of Richard Catrambone and the insiders further transferring, secreting, and dissipating assets including the home, personal property, and the trucking companies constitute irreparable harm warranting injunctive relief. Richard Catrambone has shown he will fraudulently transfer assets because he has done so in the past. This is a form of irreparable harm that warrants a preliminary injunction. *See Caterpillar, Inc.,* 880 F.Supp. at 587 (granting preliminary injunction to prevent fraudulent transfers of assets while allowing defendants to carry on their business subject to reasonable safeguards). Marshals pursuant to Rule 69.

Finally, an injunction will not harm the public interest and in fact promotes the public interest by preserving the power of this court to enforce judgments against defendants like Richard Catrambone who not only lie during trial incurring sanctions, but continue their shenanigans in supplementary proceedings.

## APPLICABLE STATE LAW

### IV. PLAINTIFF PRESENTS A COLORABLE CLAIM FOR ACTUAL FRAUD UNDER IUFTA AND IS HIGHLY LIKELY TO SUCCEED ON THE MERITS

The main statute at issue is the Illinois Uniform Fraudulent Transfer Act, 740 ILCS 160/1, et seq. ("IUFTA"). The IUFTA states at section 8 that: "In an action for relief against transfer obligation under the Act, a creditor may obtain: (A) An injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property." Plaintiffs are entitled to relief under Illinois Uniform Fraudulent Transfer Act, 740 ILCS 160/8 (a) & (b), which provide that a creditor may obtain the following relief:

> §8. (a) (1) avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;
>
> (2) an attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by the Code of Civil Procedure;
>
> (3) subject to applicable principles of equity and in accordance with applicable rules of civil procedure,
>
>     (A) an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;
>     (B) appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or
>     (C) any other relief the circumstances may require.
>
> §8. (b) If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds.

The IUFTA defines "debtor" as a person who is liable on a claim. 740 ILCS 160/2(f). "Claim" means a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable,

secured, or unsecured." 740 ILCS 160/2(c). Richard Catrambone is indisputably a debtor under IUFTA. Thomas Adams has a claim against Richard Catrambone under IUFTA. Lorraine Catrambone and the adult children are "insiders" under the IUFTA as are the trucking companies Lorraine nominally owns, referred to herein.

"A party seeking to obtain a preliminary injunction must demonstrate: (1) its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) it will suffer irreparable harm if the injunction is not granted." Ty Inc v. The Jones Group, 237 F.3d 891, 895 (7th Cir., 2001). Plaintiff satisfies his burden because the evidence clearly satisfies enough of the badges of fraud to establish actual intent – "fraud in fact" or actual fraud criteria of section 5(a)(1) of IUFTA. "In determining whether a transfer is made with actual intent to defraud, the UFTA sets forth several factors — also known as the "badges of fraud" — from which an inference of fraudulent intent may be drawn. Section 160/5(b) of the UFTA sets forth the following indicia" (In re Eckert, 388 B.R. 813, at 840 (Bankr. N.D. Ill., 2008):

> 1. The transfer or obligation was to an insider;
> 2. The debtor retained possession or control of the property transferred after the transfer;
> 3. The transfer or obligation was disclosed or concealed;
> 4. Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
> 5. The transfer was of substantially all the debtor's assets;
> 6. The debtor absconded;
> 7. The debtor removed or concealed assets;
> 8. The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
> 9. The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
> 10. The transfer occurred shortly before or shortly after a substantial debt was incurred; and
> 11. The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.
> 740 ILL. COMP. STAT. 160/5(b).

"When these "badges of fraud" are present in sufficient number, they may give rise to an inference or presumption of fraud. Knippen, 355 B.R. at 732-33 (citing Steel Co. v. Morgan Marshall Indus., Inc., 278 Ill.App.3d 241, 214 Ill.Dec. 1029, 662 N.E.2d 595, 602 (1996)). The presence of

seven badges of fraud has been held sufficient to raise a presumption of fraudulent intent. See <u>Berland v. Mussa</u> (In re Mussa), 215 B.R. 158, 170 (Bankr.N.D.Ill. 1997). Under the Federal Rules of Evidence, "a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift ... the burden ... in the sense of the risk of nonpersuasion, which remains ... upon the party on whom it was originally cast." FED.R.EVID. 301. (In re Eckert, 388 B.R. 813, at 840)

Nearly all of the badges of fraud are present here to determine actual intent to defraud Plaintiff as creditor. "The transfer or obligation was to an insider," and "the debtor retained possession or control of the property transferred after the transfer." 740 ILCS 160/5(b)(1), (2). Richard continues to live in the home located at 10756 Wentworth, Naperville, Illinois to this day with his wife Lorraine since the home was built. In addition, "the transfer or obligation was ... concealed" (740 ILCS 160/5(b)(3)) from Plaintiff, since it never was disclosed to Plaintiff and it was not public information but rather was a private transaction involving a private land trust. As described in the Motion to Cancel Fraudulent Transfer, the documents showing the transfer were not discovered until 2011 in the post-judgment discovery of assets through a third party citation to United Central Bank. **Exhibits A and F**. Plaintiff's counsel first discovered the transfer after conducting post-judgment supplementary proceedings in this case. Plaintiff could not have learned of the transfer prior to initiating post-judgment proceedings in this case, because the documents which reflect the transfer are non-public documents held in a private trust.

Moreover, before the transfer was made or obligation was incurred, the debtor Richard had been sued and "the transfer was of substantially all of the debtor's assets." 740 ILCS 160/5(b)(4), (5). Since the amounts transferred represented almost all of Richard's assets, the transfers to Lorraine and the setup of the trucking companies were an attempt by defendant to "remove or conceal assets" from Plaintiff. 740 ILCS 160/5(b)(7). Defendant Richard Catrambone has acted with actual intent to hinder, delay and defraud his creditors by fraudulently transferring assets to insiders without adequate

- 9 -

compensation. And he has concealed his income from SUM EXP, Inc. According to his post-judgment deposition in this case taken on August 4, 2011, Defendant Richard stated as follows:

> 3    **Q. Are the social security income and the pension**
> 4    **income the only sources of your income, Mr. Catrambone?**
> 5    **A. Yes.**

(RC depo p. 10. Aug 4 2011)

\*\*\*

> 20    **Q. Now, do you own any certificates of deposit,**
> 21    **Mr. Catrambone, presently?**
> 22    **A. As I've stated, I have one bank account. I**
> 23    **have nothing else. You have the Excel spreadsheet. It**
> 24    **shows you what I have, zero assets. I have nothing.**

(RC depo p.20., Aug 4 2011)

But in reality on or about August 24, 2006, Richard Catrambone assigned 100% of his interest in Chicago Title Land Trust No. 1105397 to Lorraine on the eve of trial in the underlying complaint. This assignment of interest was on information and belief without consideration and made solely to shield his interest in the trust from creditors and especially the eventual judgment in this matter, in other words it was done with actual intent to hinder, delay or defraud creditors and without receiving a reasonably equivalent value in exchange for the transfer or obligation and thus constitute fraudulent transfers in violation of Illinois Uniform Fraudulent Transfer Act, 740 ILCS 160/5.

## V. EQUITABLE POWERS OF THIS COURT ALSO ALLOW A CLAIM AGAINST THE LAND TRUST AND TRUCKING COMPANIES

A court may impose a resulting trust on assets nominally held by third party when judgment debt or retains the beneficial interest in those assets. *Brown v. Szabo*, 353 B.R. 554, 560 (Bankr. N.D. Ill. 2006). It is well established Illinois law that a resulting trust arises and vests at the time of the conveyance. *Id.* (citing *Fender v. Yagemann*, 193 N.E.2d 794, 796 (1963); *Hanley v. Hanley, 152 N.E.2d 879, 882 (1958»*. For example, in *Resolution Trust Corp. v Ruggiero*, 994 F.2d 1221 (7th Cir. 1993), the Seventh Circuit affirmed the district court's summary judgment imposing a resulting trust on real estate nominally titled in the judgment debtor's wife's name, and an order to turn the property over to her husband's judgment creditor, where the record showed that husband purchased the real estate

with his own money, husband maintained the property and paid expenses associated with it, and wife had no income or wealth to buy or maintain the property. 994 F.2d at 1223-24. Even though the property had been bought and placed in the wife's name before the plaintiff had obtained a judgment against her husband, the court found that "from the outset [the wife] had only a bare legal title in the properties" but the evidence showed "They were always Angelo's." *Id.* at 1227.

Similarly, the property was always Richard's, and he has continuously lived at 10756 Wentworth Drive since the home was built:

> 3 Q. Now, after you moved out of 104 Arlington
> 4 Drive in Naperville, where did you take up residence?
> 5 A. 10756 Wentworth Drive.
> 6 Q. And that is where you currently live?
> 7 A. Yes.
> 8 Q. Have you lived there continuously since you
> 9 moved into 10756 Wentworth Drive?
> 10 A. Yes.

RC Depo p. 12.

"Under Illinois law, ownership rights in property do not depend solely on formalities of title. A person may have an interest in property-and may even be considered the owner-although someone else has title." *Cohen v. Ulz,* 388 B.R. 865, 868 (Bankr. N.D. Ill. 2008) (citing 30A Illinois Law & Prac. Property § 11 (1994). A judgment creditor may levy upon property held in the name of someone other than the judgment debtor if the debtor engaged in a legal fiction by placing title to the property in the hands of someone else while, in actuality, retaining the benefits of ownership. *Dexia v. Rogan,* 2008 WL 4543013, at *8 (Oct. 9, 2008, N.D. Ill., J. Kennelly) (citing *Richards v. United States,* 231 B.R. 571, 578 (E.D.Pa.1999). "A nominee is one who holds bare legal title to property for the benefit of another." *Scoville v. United States,* 250 F.3d 1198, 1202 (8th Cir.2001) (citing Black's Law Dictionary (7th ed.1999»; *see also United States v. Gilbert,* 244 F .3d 888, 902 n. 37 (11th Cir.200 1).

To determine whether a person is a nominee for a debtor, courts consider the following factors:

(1) whether the debtor expended personal funds for the property; (2) whether inadequate or no consideration was paid by the alleged nominee; (3) whether the property was placed in the alleged nominee's name in anticipation of a lawsuit or other liability; (4) whether the debtor enjoys the benefits of, retains possession of, and exercises dominion and control over the property; (5) whether a close family relationship exists between the debtor and the alleged nominee; (6) whether conveyances between the debtor and alleged nominee were recorded; and (7) whether the alleged nominee interferes with the debtor's use of the property. *See, e.g., Cody* v. *United States, et al., 348* F.Supp. 2d 682, (E.D.V.A. 2004); *Holman* v. *United States,* 505 F.3d 1060, 1065 n.1 (10th Cir. 2007) (citing *Spotts* v. *United States,* 429 F .3d 248, 251 n.2 (6th Cir. 2005); and *Dexia,* 2008 WL 4543013, at *8 (citing *Richards,* 231 B.R. at 579 and *United States* v. *Reed,* 168 F.Supp.2d 1266 (D.Utah 2001»). The undisputed facts in this case clearly show that Lorraine is Richard's nominee.

Richard expended significant funds for the property. When it was built in 1999, Richard paid for all of the construction and improvements at 110756 Wentworth, performed some of the work himself (according to construction loan draws), provided other labor, and made most decisions about what construction was performed to the property. Lorraine paid no, or certainly inadequate, consideration for the property. On information and belief Lorraine has not contributed to the property taxes on 110756 Wentworth, which are in excess of $15,000 annually. As an unemployed cosmetologist she could not have possibly done so. Richard's interest in the land trust including the property at 110756 Wentworth was transferred to Lorraine in anticipation of this lawsuit's liability. Moreover, the attorneys who facilitated the transfer, Faraci and Faraci, were contemporaneously representing Richard in this lawsuit as well. Trucking companies SUM EXP, INC and SG NORTH LLC were also obviously set up in Lorraine's name in anticipation of a judgment in this case. SUM EXP, INC. was set up in Lorraine's name at the end of 2007, shortly after the closing of Great Lakes Building Materials. SUM EXP, INC. appears to have been a new substitute for the trucking entities affiliated with Great Lakes Building Materials, which the NLRB affirmed on August 10, 2007 were

deemed to be the same employer as Summit Express, Inc. and Summit Truck Leasing. **Exhibit E.**

Courts have repeatedly rejected such shenanigans as mere contrivance in unsuccessful attempts to defeat judgment creditors. *See, e.g., Dargan v. Ingram, et al.,* 2009 WL 1437564 (May 22, 2009, W.D. Wash.) (granting preliminary injunction and asset freeze order where defendant used home, property, and vehicle all titled solely in girlfriend/wife's name; despite prenuptial agreement relinquishing any interest husband may have had to that property, he maintained possession or control of those assets, and wife was well aware of husband's debts, which motivated her to obtain prenuptial agreement). Clearly Richard enjoyed the benefits, retained possession, and exercised dominion and control over the property free of any interference from Lorraine. From the date of purchase through to the present, Rich has always treated the property as his own and he continues to live there today. "Under Illinois law, ownership rights in property do not depend solely on formalities of title. A person may have an interest in property-and may even be considered the owner-although someone else has title." *Cohen v. Ulz,* 388 B.R. 865, 868 (Bankr. N.D. Ill. 2008) (citing 30A Illinois Law & Prac. Property § 11 (1994).,

### B. Marital Property

A spouse who holds title to marital property may freely alienate that property during the marriage by selling it or encumbering it with a lien, as was done by the judgment against Richard here. *See Davis v. Combes,* 294 F.3d 931, 937 (7th Cir. 2002). Even if the Catrabones were getting divorced any divorce judgment could transfer no more to Lorraine than what Richard possessed, all of which is property and rights to property subject to Plaintiff Thomas Adams' judgment lien.

### C. Constructive Trust

A constructive trust on the property also shows Plaintiff's rights to this property. Under Illinois law, "a constructive trust is imposed to prevent unjust enrichment by imposing a duty on the person receiving [a] benefit to convey the property back to the person from whom it was received." *Martin v. Heinold Commodities, Inc.,* 643 N.E.2d 734, 745 (1994); *Hong Kong Electro-Chemical Works, Ltd. v.*

*Less*, 539 F.3d 795, 800 (7th Cir.2008). A constructive trust may be imposed even when the ultimate recipient of the property is an innocent party. *Smithberg v. Illinois Mun. Ret. Fund*, 735 N.E.2d 560, 566 (2000) ("By accepting property, [a person] adopts the means by which it was procured.") Lorraine has most certainly enjoyed years of unjust enrichment by her receipt and retention of 10756 Wentworth, Naperville, Illinois from Richard. Lorraine has been almost entirely supported by Richard, living off money he provided ever since they got married. Lorraine, formerly licensed cosmetologist, does not have the ability to maintain a home like 10756 Wentworth by herself. The home is approximately 5,500 square feet and the property taxes alone are approximately $16,000. **Exhibit B.** Allowing Lorraine to retain 10756 Wentworth, Naperville, Illinois and the other real estate in the trust and to the detriment of the Plaintiff would violate fundamental principles of justice, equity, and good conscience.

**The Public Interest**

Finally, the public has an interest in seeing that parties be held accountable when they fraudulently seek to evade judgment of the Court.

## EXPEDITED DISCOVERY

Petitioner requests expedited discovery in order to establish the proof necessary for this court to a) provide emergency relief by preventing the dissipation and transfer of assets from TRUST NO. 1105397 including the residence at 10756 Wentworth Drive, Naperville, Illinois, and b) to provide the evidentiary bases for entry of a turnover order and/or US Marshal sale of TRUST NO. 1105397 including the residence at 10756 Wentworth Drive, Naperville, Illinois.

## ATTORNEYS FEES

Richard Catrambone not only failed to voluntarily satisfy the judgment, he compounded plaintiff's collections efforts by fraudulently transferring his interest in the multimillion dollar land trust to his wife, lied in post-judgment deposition as to his income and assets, and fraudulently set up the trucking companies in Lorraine's name with actual intent to hinder, delay or defraud Plaintiff as

creditor in violation of Illinois Uniform Fraudulent Transfer Act, 740 ILCS 160/5. This has caused plaintiff to expend enormous attorney time and expense to get to the truth of his assets and income in the form of his real property and trucking companies. Defendant has placed this burden on Plaintiff and he must be made to pay for it: "**THE WITNESS:** That's your opinion, and my opinion is if you think there's anything there, you need to find it. I have nothing. You don't want to take that on face value. There is nothing." RC Depo. P. 39. **Exhibit D**. Because of the extraordinary efforts needed to yet again surmount Richard Catrambone's frauds on the court, Plaintiff requests attorneys' fees and costs.

## CONCLUSION

Caselaw supports the use of injunctions to preserve the rights of creditors under the Uniform Fraudulent Transfer Act. *See, e.g., Bowman v. Dixon Theatre Renovation, Inc.*, 221 Ill.App.3d 35, 581 N.E.2d 804, 163 Ill.Dec. 650 (2d Dist. 1991). Injunctive relief is warranted in this case because Richard Catrambone has already demonstrated his willingness to engage in conduct designed to delay, hinder, and defeat the just claims of his creditors, namely transferring funds to a family member without receiving compensation therefor, and entry of an injunction is necessary to prevent further transfers of assets designed to frustrate plaintiff's just claims. The entry of a temporary injunction will not prejudice the rights of any party hereto, the entry of a temporary injunction will preserve the status quo, plaintiff has demonstrated a likelihood of success on the merits, plaintiff has demonstrated a clearly ascertainable right in need of protection, namely, the Judgment in his favor; and plaintiff has no adequate remedy at law. SUM EXP, INC. and SG NORTH LLC are paying for Richard's expenses and their status quo must be preserved by this court immediately in order for the assets to be available for execution pursuant to Rule 69.

**WHEREFORE**, Plaintiff prays for entry of the Order attached as exhibit hereto

By:

S/ Jeffrey J. Antonelli

Jeffrey J. Antonelli
Law Offices of Jeffrey Antonelli, Ltd
30 North LaSalle Street, Suite 3400
Chicago, IL 60602
tel: (312) 201-8310
fax: (312) 332-4663
em: Jeffrey@Antonelli-Law.com

Carlton Odim
Odim Law Offices
225 West Washington Street, #2200
Chicago, Illinois 60606
tel: (312) 578-9390
fax: (312) 924-0201
em: carlton@odimlaw.com